**In re VERMAATEN.**

[Cite as *In re Vermaaten* (1996), 116 Ohio App.3d 639.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APF04–531.

Decided Dec. 17, 1996.

*Mark A. Serrott Co., L.P.A.,* and *Mark A. Serrott,* for appellant.

*Michael Miller,* Franklin County Prosecuting Attorney, and *Keith A. Cornwell,* Assistant Prosecuting Attorney, for appellee.

TYACK, Judge.

Shortly before 8:00 a.m. on August 9, 1994, Terry Lane was parked at the side of a road, bending down or standing between his vehicle and an attached "stump grinder." Lane was fatally injured when an automobile driven by sixteen-year-old Jacob A. Vermaaten struck the stump grinder, crushing Lane between the grinder and his vehicle. As a result of the accident, a complaint was filed in the Juvenile Branch of the Franklin County Court of Common Pleas, Division of Domestic Relations, charging Jacob with being a delinquent minor for having committed the offense of vehicular homicide.

Following an adjudicatory hearing and viewing of the scene of the accident, the referee rendered a report in which she found that the state had proved beyond a reasonable doubt the elements of vehicular homicide. Accordingly, the referee recommended that the court find Jacob to be a delinquent minor.

Defense counsel timely filed objections to the report and recommendation of the referee. By agreement of the parties, the objections were submitted on briefs to the trial judge. Pursuant to a decision and entry filed April 1, 1996, the trial court overruled the objections and adopted the referee's report and recommendation.

Jacob Vermaaten, appellant, has timely appealed, assigning three errors for our consideration:

"Assignment of Error No. I:

The trial court erred in convicting the appellant because the evidence failed to establish beyond a reasonable doubt that appellant's conduct constituted a substantial lapse of due care, an essential element of the offense.

"Assignment of Error No. II:

The trial court erred in allowing appellant's statement into evidence while he was under arrest and when the police interrogated appellant without having advised appellant of his *Miranda* rights.

"Assignment of Error No. III:

The trial court erred in allowing Sgt. Wayt to testify as an expert accident reconstructionist when he was unqualified to testify as to how the accident occurred and when he admitted he was unqualified as an accident reconstructionist."

█ The elements of vehicular homicide, a misdemeanor of the first degree if committed by an adult, are set forth in R.C. 2903.07 as follows:

"(A) No person, while operating or participating in the operation of a motor vehicle * * * shall *negligently* cause the death of another." (Emphasis added.)

As distinguished from tort law defining negligence as the failure to exercise ordinary care, for purposes of the culpable mental state for *criminal* conduct, "negligence" is defined as follows:

"A person acts negligently when, *because of a substantial lapse from due care,* he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." (Emphasis added.) R.C. 2901.22(D).

Thus, the question presented by the first assignment of error is whether the trial court erred in concluding that the evidence was sufficient to establish beyond a reasonable doubt that appellant's conduct constituted a "substantial" lapse from due care. For the reasons which follow, we find that the evidence, in most respects undisputed, was insufficient to support that conclusion.

The evidence presented at the adjudicatory hearing established the following. The night before the accident, appellant and several of his friends went to a wooded area with the intention of camping. When the temperature became too cold to sleep outside in their sleeping bags, appellant and one friend, Scott Field,

decided to sleep in appellant's car. The other boys left for their homes. Scott Field estimated that he and appellant were awake until 1:00 or 2:00 a.m.

Appellant and Scott awoke between 7:30 and 8:00 the following morning and soon left to go to a friend's house. In Scott's opinion, appellant did not seem tired that morning. Scott testified that he was asleep in the passenger seat of appellant's car both before and at the time of the collision.

The record establishes that appellant was traveling north on a residential street, Buenos Aires Boulevard. The impact occurred at a point where the street inclined upward and then crested and dipped somewhat. The record suggests that the incline would not markedly obstruct a driver's northward view.

Dale Thompson, a resident of the neighborhood in which the accident occurred, testified regarding his limited knowledge of the accident. Thompson had seen the decedent working near the stump grinder in front of a neighbor's house. The weather conditions were "perfect"—sunny, clear and dry. Thompson testified that the decedent was parked near the curb, without any lights, reflectors, flags, traffic cones, or "men at work" signs. In Thompson's opinion, there was sufficient room for an automobile to pass the decedent's parked vehicle.

Neither Scott Field nor Dale Thompson testified as to precisely how the accident occurred. Both were alerted to the crash by the sound of the impact.

The state emphasizes the well-established general rule that the determination of whether a lapse of due care is substantial is a question for the trier of fact. *State v. Ovens* (1974), 44 Ohio App.2d 428, 73 O.O.2d 540, 339 N.E.2d 853. However, notwithstanding the deference owed a factfinder's resolution of a disputed fact, this rule does not render a trial court's factual determinations untouchable. Indeed, the limited power of review in this respect does not restrict an appellate court's role to such an extent that we are essentially compelled to rubber-stamp such findings.

As the *Ovens* court aptly noted, as have numerous courts since in following *Ovens*, the term "substantial" is a relative, inexact term, which escapes precise definition. Indeed, the word "has been said to be as elusive a word as the English language contains" and is susceptible of various meanings depending on the circumstances. *Id.* at 431, 73 O.O.2d at 542, 339 N.E.2d at 855–856.

Significantly, as alluded to above, the negligence standard required to sustain a criminal conviction contemplates a higher degree of fault than does the standard to sustain an award of civil damages. Of perhaps even greater significance, criminal law, of course, requires a higher degree of proof to sustain a conviction.

There was no allegation here that appellant was reckless; there was no suggestion that appellant was driving under the influence of alcohol or other

drugs, or even slightly exceeding the speed limit. Essential to the prosecution's case was its theory that a weary appellant *might* have fallen asleep at the wheel after a difficult night attempting to sleep in his car. Allowing oneself to fall asleep while driving could indeed constitute criminal negligence. However, the evidence proved only that appellant and his friend likely had a less-than-ideal, arguably brief period of sleep during the night immediately preceding the accident. The evidence did not sufficiently establish that appellant fell asleep at the wheel.

The referee herself noted on the record how agonizingly difficult it was to reach a verdict in this case. We, too, find the circumstances to be tragic for all involved. However, we believe that the referee's summation of the state of the evidence in this case, a criminal prosecution, speaks volumes as to the lack of reasonable doubt.

There simply was no affirmative showing that appellant's conduct, the precise details of which are necessarily purely speculative, amounted to a *substantial* lapse from due care. In the absence of such affirmative proof, the trial court analyzed the evidence by employing a mechanism akin to the *res ipsa loquitur* doctrine to reach the following conclusion:

"Accordingly, the Court finds that the evidence presented at trial was sufficient to establish, beyond a reasonable doubt, that *the accident would not have occurred in the absence of a substantial lapse of Defendant's duty to exercise due care* in driving his vehicle." (Emphasis added.)

A factfinder is certainly free to draw inferences. However, the trial court here improperly analyzed the state of the evidence. For all practical purposes, the court shifted the burden of proof to the defense on a critical element of the offense; implicit in the trial court's reasoning is its apparent requirement that appellant prove a negative—that the accident occurred without a substantial lapse of due care on his part. While every traffic fatality is undeniably tragic, *criminal* conduct is not necessarily or presumptively the cause.

For the foregoing reasons, the first assignment of error is sustained.

Our disposition of the first assignment of error renders the second and third assignments of error moot. See App.R. 12.

Having sustained the first assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, J., concurs.

PETREE, P.J., dissents.

PETREE, Presiding Judge, dissenting.

Being unable to agree with the majority, I respectfully dissent.

The majority concludes that defendant's conviction of vehicular homicide is not supported by sufficient evidence and is against the manifest weight of the evidence.

R.C. 2903.07(A) defines the offense of "vehicular homicide" as follows:

"No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall negligently cause the death of another or the unlawful termination of another's pregnancy."

Under R.C. 2901.22, "criminal negligence" is defined as follows:

"(D) A person acts negligently when, because of a *substantial lapse from due care,* he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." (Emphasis added.)

In this case, the prosecution presented evidence that defendant's vehicle struck the rear portion of the stump grinder while traveling north on Buenos Aires Boulevard. The investigating officer testified that Buenos Aires Boulevard has a width of thirty-five feet from curb to curb in the area where this accident occurred. Other testimony in the record indicates that the victim's pickup truck was legally parked near the curb on the right side of the road; there were no obstructions to defendant's view of the road or of the truck and stump grinder; there was no oncoming traffic; and the weather conditions that day were "perfect," "sunny," and "clear." The evidence establishes that defendant's vehicle could have safely passed the victim's truck without crossing or even touching the double yellow line.

Scott Field, the passenger in defendant's automobile at the time of the accident, testified that he went to sleep around 1:00 or 2:00 a.m., but he could not say whether defendant fell asleep at that time. Field stated that he slept in the front passenger seat of defendant's Pontiac Grand Am and defendant slept in the front driver's seat. Field awoke at approximately 7:30 a.m. on the morning of the accident. Moments later, defendant started his vehicle and headed towards the home of a friend. Field testified that he went back to sleep at that time and was still asleep when the accident occurred.

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Supreme Court of Ohio held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Id.* at paragraph two of the syllabus.

Defendant elected not to testify in this case, his passenger was asleep at the time of the accident, and the victim was killed. Consequently, there is no direct evidence of what defendant was doing in the moments before the accident. However, the absence of direct evidence does not necessarily preclude the prosecution from proving its case. Indeed, in *Jenks, supra*, the Supreme Court of Ohio made the following observations regarding the value of circumstantial evidence in a criminal case:

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction. Therefore, where the jury is properly and adequately instructed as to the standards for reasonable doubt a special instruction as to circumstantial evidence is not required. (*Holland v. United States* [1954], 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150, followed; *State v. Kulig* [1974], 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, overruled.)" *Id.* at paragraph one of the syllabus.

In light of the *Jenks* standard, I find that the evidence in the record permits the following inferences: (1) defendant fell asleep at the wheel and lost control of the vehicle, or (2) through carelessness or inattentiveness, defendant inexplicable allowed his vehicle to strike a clearly visible, legally parked vehicle.

Even the majority is willing to concede that falling asleep at the wheel is a substantial lapse of due care. Moreover, defendant admits that the evidence supports a finding that the victim's death was a direct and proximate result of his lapse from due care. Under R.C. 2903.07(A), "the determination of whether or not a lapse of due care is substantial is a question for the trier of facts." *State v. Ovens* (1974), 44 Ohio App.2d 428, 432, 73 O.O.2d 540, 542, 339 N.E.2d 853, 856. Consequently, even if the evidence of defendant's lack of sleep be disregarded, defendant's admitted lapse from due care raises a factual issue regarding the degree of defendant's culpability. Given the lack of any evidence of circum-

stances which would justify or excuse defendant's failure to maintain control of his vehicle, it is my determination that a trier of fact could find, beyond a reasonable doubt, that defendant departed substantially from due care.

With regard to the manifest weight of the evidence, appellate courts' function in reviewing a claim that a conviction is against the manifest weight of the evidence is to weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned. *State v. Banks* (1992), 78 Ohio App.3d 206, 604 N.E.2d 219; *State v. Stith* (June 11, 1996), Franklin App. No. 95APA07–934, unreported, 1996 WL 325473.

The issue is whether the trial court lost its way in determining that defendant was criminally negligent. As stated above, the evidence presented by the prosecution of the conditions which existed at the time of this accident and the circumstances under which this accident occurred is sufficient to support a finding of criminal negligence beyond a reasonable doubt. This evidence is not in dispute. Thus, the verdict in this case should not be set aside as being against the manifest weight of the evidence. *Jenks, supra.* I would overrule defendant's first assignment of error.

Given my decision with respect to defendant's first assignment of error, I must now address the remaining two assignments of error.

In defendant's second assignment of error, defendant contends that the trial court erred in permitting the investigating officer to testify as to the point of impact. However, defendant's counsel did not timely object to this testimony and has waived this error. Moreover, the Supreme Court of Ohio has stated, in dicta, that a police officer trained in accident investigation may render an expert opinion on the point of impact in a case involving an automobile accident. *Scott v. Yates* (1994), 71 Ohio St.3d 219, 643 N.E.2d 105. Thus, I would overrule defendant's second assignment of error.

In defendant's third assignment of error, defendant contends that the trial court erred in admitting a statement made by defendant to the investigating officer shortly after the accident occurred. Although the trial court admitted defendant's statement over defendant's objection, the trial court expressly stated that it did not rely on that statement in support of its decision. Consequently, I perceive no prejudice to defendant arising from the admission of that statement. I would, therefore, overrule defendant's third assignment of error.

In short, I would overrule each of defendant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.